John K. Flock (State Bar No. 200183)
  jflock@bglawyers.com
Bradley & Gmelich LLP
700 N. Brand Boulevard 10th Floor
Glendale, CA 91203
Telephone: (818) 243-5200
Facsimile: (818) 243-5266

Katherine Laatsch Fink (*pro hac vice* forthcoming)
  kfink@bannerwitcoff.com
Illinois Bar No. 6292806
Anna King (*pro hac vice* forthcoming)
  aking@bannerwitcoff.com
Illinois Bar No. 6295283
John A. Webb (*pro hac vice* forthcoming)
  jwebb@bannerwitcoff.com
Illinois Bar No. 6321695
Banner & Witcoff, Ltd.
71 Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Attorneys for Plaintiff
LAKESHORE EQUIPMENT COMPANY

[CAPTION on Next Page]

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAKESHORE EQUIPMENT COMPANY, a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>ECR4KIDS, L.P., a California limited partnership,<br><br>        Defendant. | Case No.  2:18-cv-10338<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>(1) **TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>(2) **TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);**<br>(3) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>(4) **UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200;**<br>(5) **TRADE DRESS DILUTION IN VIOLATION OF CAL. BUS. & PROF. CODE § 14247;**<br>(6) **COMMON LAW TRADE DRESS INFRINGEMENT;**<br>(7) **COMMON LAW UNFAIR COMPETITION;**<br>(8) **COMMON LAW MISAPPROPRIATION; and**<br>(9) **UNJUST ENRICHMENT.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lakeshore Equipment Company d/b/a Lakeshore Learning Materials ("Lakeshore" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendant ECR4KIDS, L.P. ("ECR4KIDS" or "Defendant"), complains and alleges as follows:

**THE PARTIES**

1.     Lakeshore is a California corporation with its principal place of business at 2695 E. Dominguez St., Carson, California 90895.

2.     On information and belief, Defendant ECR4KIDS is a California limited partnership with its principal place of business at 2245 San Diego Ave., Suite 125, San Diego, California 92110.

**JURISDICTION AND VENUE**

3.     This is an action for trade dress infringement, unfair competition and false designation of origin, trade dress dilution, misappropriation, and unjust enrichment.  This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("the Lanham Act"), federal common law, the California Business & Professional Code, and state common law, including the law of California.

4.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.     This Court has personal jurisdiction over ECR4KIDS because, *inter alia*, ECR4KIDS is doing business in the State of California, including in this District.  For example, and as discussed in more detail below, (i) ECR4KIDS has advertised, promoted, offered for sale, sold, and/or distributed, and continues to advertise, promote, offer for sale, sell, and/or distribute infringing products, to customers and/or potential customers, including in this District, at least through ECR4KIDS'              websites              (http://www.ecr4kids.com/, https://www.facebook.com/ECR4Kids/,  and  https://www.instagram.com/ecr4kids/) and through retailers such as Amazon and/or Target; (ii) ECR4KIDS' tortious acts giving rise to this lawsuit and harm to Lakeshore have occurred and are occurring in the State of California, including in this District; (iii) on information and belief, ECR4KIDS acted with knowledge that its unauthorized use of Lakeshore's rights would cause harm to Lakeshore in the State of California and in this District; and (iv) ECR4KIDS' customers and/or potential customers reside in the State of

California, including in this District.

6.     Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b)-(d).

## FACTUAL ALLEGATIONS -
## LAKESHORE'S INTELLECTUAL PROPERTY

7.     For over sixty years, Lakeshore has continuously engaged in the development, manufacture, and sale of its children's furniture.  Lakeshore created unique, distinctive, and non-functional designs to use with Lakeshore's children's furniture.  Lakeshore has extensively and continuously promoted and used these designs in the United States and in California.  Through that extensive and continuous promotion and use, Lakeshore's designs have become well-known indicators of the origin and quality of Lakeshore's children's furniture products. Lakeshore's designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, Lakeshore owns trade dress rights relating to its children's furniture designs.

8.     Among its children's furniture products, Lakeshore sells and promotes its Privacy Nook.  Lakeshore has enjoyed significant sales of the Lakeshore Privacy Nook throughout the United States, including sales to customers in the State of California.  Lakeshore has invested significant resources in the design, development, manufacture, advertising, and marketing of the Lakeshore Privacy Nook.

9.     The design of the Lakeshore Privacy Nook has distinctive and non-functional features that identify to consumers that the origin of the Lakeshore Privacy Nook is Lakeshore.  As a result of at least Lakeshore's continuous and exclusive use of the Lakeshore Privacy Nook, Lakeshore's marketing, advertising, and sales of the Lakeshore Privacy Nook, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, Lakeshore owns trade dress rights in the design and appearance of the Lakeshore Privacy Nook, which consumers have come to uniquely associate with Lakeshore.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10.    Exemplary images of a Lakeshore Privacy Nook are shown below:

| Illustration 1: Exemplary Images of a Lakeshore Privacy Nook. |
|---|

 



11.    Lakeshore has trade dress rights in the overall look, design, and appearance of the Lakeshore Privacy Nook, which includes the design and appearance of the curves and lines in the Lakeshore Privacy Nook; the design and

appearance of the outer surface of the Lakeshore Privacy Nook; the placement, design and appearance of the walls of the Lakeshore Privacy Nook; the placement, design and appearance of the front portion of the Lakeshore Privacy Nook; the placement, design, and appearance of the openings in the walls of the Lakeshore Privacy Nook; the design and appearance of the top portion of the Lakeshore Privacy Nook; the design and appearance of the bottom portion of the Lakeshore Privacy Nook; the design and appearance of the seat portion of the Lakeshore Privacy Nook;  the placement, design, and appearance of the feet of the Lakeshore Privacy Nook; the color contrast and color combinations of the Lakeshore Privacy Nook; and the relationship of these features to each other and to other features.

12.    Lakeshore also sells and promotes its Lakeshore Tree Seats.  Lakeshore has enjoyed significant sales of the Lakeshore Tree Seats throughout the United States, including sales to customers in the State of California.   Lakeshore has invested significant resources in the design, development, manufacture, advertising, and marketing of the Lakeshore Tree Seats.

13.    The design of the Lakeshore Tree Seats has distinctive and non-functional features that identify to consumers that the origin of the Lakeshore Tree Seats is Lakeshore.  As a result of at least Lakeshore's continuous and exclusive use of the Lakeshore Tree Seats, Lakeshore's marketing, advertising, and sales of the Lakeshore Tree Seats, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, Lakeshore owns trade dress rights in the designs and appearances of the Lakeshore Tree Seats, which consumers have come to uniquely associate with Lakeshore.

14.    An exemplary image of the Lakeshore Tree Seats is shown below:

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13

**Illustration 2: Exemplary Image of Lakeshore Tree Seats.**



14    15.    Lakeshore has trade dress rights in the overall look, design, and appearance of the Lakeshore Tree Seats, which includes the design and appearance of the curves and lines of the Lakeshore Tree Seat; the placement, design, and appearance of the walls of the Lakeshore Tree Seat; the placement, design, and appearance of the top surface of the Lakeshore Tree Seat; the design on the top surface of the Lakeshore Tree Seat; the color contrast and color combinations of the Lakeshore Tree Seat; and the relationship of these features to each other and to other features.

16.    Lakeshore also sells and promotes its Lakeshore Outdoor Table, Bench, and Chairs.   Lakeshore has enjoyed significant sales of the Lakeshore Outdoor Table, Bench, and Chairs throughout the United States, including sales to customers in the State of California.   Lakeshore has invested significant resources in the design, development, manufacture, advertising, and marketing of the Lakeshore Outdoor Table, Bench, and Chairs.

17.    The designs of the Lakeshore Outdoor Tables, Benches, and Chairs

have distinctive and non-functional features that identify to consumers that the origin of the Lakeshore Outdoor Tables, Benches, and Chairs is Lakeshore.  As a result of at least Lakeshore's continuous and exclusive use of the Lakeshore Outdoor Table, Bench, and Chairs, Lakeshore's marketing, advertising, and sales of the Lakeshore Outdoor Table, Bench, and Chairs, and the highly valuable goodwill and substantial secondary meaning acquired as a result, Lakeshore owns trade dress rights in the designs and appearances of the Lakeshore Outdoor Table, Bench, and Chairs, which consumers have come to uniquely associate with Lakeshore.

18.   An exemplary image of the Lakeshore Outdoor Table, Bench, and Chairs is shown below:

**Illustration 3: Exemplary Image of the Lakeshore Outdoor Table, Bench, and Chairs.**



19.   Lakeshore has trade dress rights in the overall look, design, and appearance of the Lakeshore Outdoor Table, Bench, and Chairs, which includes the design and appearance of the curves and lines of the Lakeshore Outdoor Table; the

design and appearance of the outer surface of the Lakeshore Outdoor Table; the placement, design, and appearance of the legs of the Lakeshore Outdoor Table; the placement, design, and appearance of the top portion of the Lakeshore Outdoor Table; the design and appearance of the top surface of the Lakeshore Outdoor Table; the placement, design, and appearance of the feet of the Lakeshore Outdoor Table; the color contrast and color combinations of the Lakeshore Outdoor Table; the relationship of these features of the Lakeshore Outdoor Table to each other and to other features; the design and appearance of the curves and lines in the Lakeshore Outdoor Bench; the design and appearance of the outer surface of the Lakeshore Outdoor Bench; the placement, design and appearance of the legs of the Lakeshore Outdoor Bench; the placement, design and appearance of the top portion of the Lakeshore Outdoor Bench; the placement, design, and appearance of the seat portion of the Lakeshore Outdoor Bench; the placement, design, and appearance of the feet of the Lakeshore Outdoor Bench; the color contrast and color combinations of the Lakeshore Outdoor Bench; the relationship of these features of the Lakeshore Outdoor Bench to each other and to other features; the design and appearance of the curves and lines of the Lakeshore Outdoor Chairs; the design and appearance of the outer surface of the Lakeshore Outdoor Chairs; the placement, design, and appearance of the legs of the Lakeshore Outdoor Chairs; the placement, design, and appearance of the seat portion of the Lakeshore Outdoor Chairs; the design and appearance of the middle portion of the Lakeshore Outdoor Chairs; the placement, design, and appearance of the top portion of the Lakeshore Outdoor Chairs; the placement, design, and appearance of the feet of the Lakeshore Outdoor Chairs; the color contrast and color combinations of the Lakeshore Outdoor Chairs; the relationship of these features of the Lakeshore Outdoor Chairs to each other and to other features; and the relationship of the Lakeshore Outdoor Table, Bench, and Chairs to each other.

20.     As a result of Lakeshore's exclusive, continuous and substantial use,

advertising, and sales of children's furniture products bearing Lakeshore's trade dress, and the publicity and attention that has been paid to Lakeshore's trade dress, Lakeshore's trade dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate them as source identifiers of Lakeshore.

## **GENERAL ALLEGATIONS – ECR4KIDS' UNLAWFUL ACTIVITIES**

21.    ECR4KIDS has purposefully advertised, promoted, offered for sale, sold, and/or distributed, and continues to advertise, promote, offer for sale, sell, and/or distribute children's furniture products that violate Lakeshore's rights, including the rights protected by Lakeshore's intellectual property.   At least ECR4KIDS' infringing covered seat products, tree seat products, and outdoor table, bench, and chairs products are confusingly similar imitations of Lakeshore's children's furniture products.   ECR4KIDS' actions have all been without the authorization of Lakeshore.

22.    Exemplary images of ECR4KIDS' infringing products are shown below:

**Illustration 4:  Exemplary Images of ECR4KIDS' Covered Seat Product.**





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Illustration 5:  Exemplary Images of ECR4KIDS' Tree Seat Product.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Illustration 6:  Exemplary Image of ECR4KIDS' Outdoor Table, Bench, and Chairs Products.**



23.    As a result of ECR4KIDS' activities related to the infringing products, there is a likelihood of confusion between ECR4KIDS and its products on the one hand, and Lakeshore and its products on the other hand.

24.    Lakeshore used its trade dress extensively and continuously before ECR4KIDS began advertising, promoting, selling, offering to sell, or distributing its infringing products.   Moreover, Lakeshore's trade dress became famous and acquired secondary meaning in the United States and in the State of California generally and in geographic areas in California before ECR4KIDS commenced its unlawful use of Lakeshore's trade dress.

25.    As discussed above and as set forth in the counts below, ECR4KIDS' actions are unfair and unlawful.

## PLAINTIFF'S CLAIMS FOR RELIEF

### Count I:

### Trade Dress Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

26.    Lakeshore realleges and incorporates the allegations set forth in paragraphs 1 through 25 as though fully set forth herein.

27.    ECR4KIDS' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing Lakeshore's trade dress.  ECR4KIDS' use of Lakeshore's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of ECR4KIDS with Lakeshore and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Lakeshore.

28.    Lakeshore's trade dress is entitled to protection under the Lanham Act.  Lakeshore's trade dress includes unique, distinctive, and non-functional designs.  Lakeshore has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, Lakeshore's trade dress has become a well-known indicator of the origin and quality of Lakeshore's children's furniture products.  Lakeshore's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Lakeshore's trade dress acquired this secondary meaning before ECR4KIDS commenced its unlawful use of Lakeshore's trade dress in connection with the infringing products.

29.    ECR4KIDS' use of Lakeshore's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Lakeshore for which Lakeshore has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation

for quality associated with Lakeshore's trade dress and its children's furniture products.

30. On information and belief, ECR4KIDS' use of Lakeshore's trade dress and colorable imitations thereof has been intentional, willful, and malicious. ECR4KIDS' bad faith is evidenced at least by the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

31. Lakeshore is entitled to injunctive relief, and Lakeshore is entitled to recover at least ECR4KIDS' profits, Lakeshore's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count II:

## Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

32. Lakeshore realleges and incorporates the allegations set forth in paragraphs 1 through 31 as though fully set forth herein.

33. Based on the activities described above, including, for example, ECR4KIDS advertising, promoting, offering for sale, selling, and distributing the infringing products, ECR4KIDS is likely to dilute, has diluted, and continues to dilute Lakeshore's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). ECR4KIDS' use of Lakeshore's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Lakeshore's famous trade dress at least by eroding the public's exclusive identification of Lakeshore's famous trade dress with Lakeshore and Lakeshore's products, by lessening the capacity of Lakeshore's famous trade dress to identify and distinguish Lakeshore's products, by associating Lakeshore's trade dress with products of inferior quality, and by impairing the distinctiveness of Lakeshore's famous trade dress.

34. Lakeshore's trade dress is famous and is entitled to protection under the Lanham Act. Lakeshore's trade dress includes unique, distinctive, and non-

functional designs.  Lakeshore's trade dress has acquired distinctiveness through Lakeshore's extensive and continuous promotion and use of Lakeshore's trade dress in the United States.  Through that extensive and continuous use, Lakeshore's trade dress has become a famous well-known indicator of the origin and quality of Lakeshore's children's furniture products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of Lakeshore and Lakeshore's children's furniture products.  Lakeshore's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Lakeshore's trade dress became famous and acquired this secondary meaning before ECR4KIDS commenced its unlawful use of Lakeshore's trade dress in connection with the infringing products.

35.    ECR4KIDS' use of Lakeshore's trade dress is likely to cause, and has caused, dilution of Lakeshore's famous trade dress, at least by eroding the public's exclusive identification of Lakeshore's famous trade dress with Lakeshore and Lakeshore's children's furniture products, by lessening the capacity of Lakeshore's famous trade dress to identify and distinguish Lakeshore's children's furniture products, by associating Lakeshore's trade dress with products of inferior quality, and by impairing the distinctiveness of Lakeshore's famous trade dress.

36.    ECR4KIDS' use of Lakeshore's trade dress has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Lakeshore for which Lakeshore has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Lakeshore's trade dress, Lakeshore's products, and Lakeshore.

37.    On information and belief, ECR4KIDS' use of Lakeshore's trade dress and colorable imitations thereof has been intentional, willful, and malicious. ECR4KIDS' bad faith is evidenced at least by the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

38.     Lakeshore is entitled to injunctive relief, and Lakeshore is also entitled to recover at least ECR4KIDS' profits, Lakeshore's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

## Count III:

### Unfair Competition and False Designation of Origin under § 43(a)
### of the Lanham Act, 15 U.S.C. § 1125(a)

39.     Lakeshore realleges and incorporates the allegations set forth in paragraphs 1 through 38 though fully set forth herein.

40.     ECR4KIDS' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Lakeshore, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition and false designation of origin, at least because ECR4KIDS has obtained an unfair advantage as compared to Lakeshore through ECR4KIDS' use of Lakeshore's trade dress and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Lakeshore.

41.     Lakeshore's trade dress is entitled to protection under the Lanham Act. Lakeshore's trade dress includes unique, distinctive, and non-functional designs. Lakeshore has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, Lakeshore's trade dress has become a well-known indicator of the origin and quality of Lakeshore's children's furniture products.  Lakeshore's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Lakeshore's trade dress acquired this secondary meaning before ECR4KIDS commenced its unlawful use of Lakeshore's trade dress in connection with the infringing products.

42.     ECR4KIDS' use of Lakeshore's trade dress and/or colorable imitations

thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Lakeshore for which Lakeshore has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Lakeshore's trade dress, Lakeshore's children's furniture products, and Lakeshore.

43.    On information and belief, ECR4KIDS' use of Lakeshore's trade dress and colorable imitations thereof has been intentional, willful, and malicious. ECR4KIDS' bad faith is evidenced at least by the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

44.    Lakeshore is entitled to injunctive relief, and Lakeshore is also entitled to recover at least ECR4KIDS' profits, Lakeshore's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count IV:

## Unfair Competition Under Cal. Bus. & Prof. Code § 17200

45.    Lakeshore realleges and incorporates the allegations set forth in paragraphs 1 through 44 as though fully set forth herein.

46.    ECR4KIDS' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Lakeshore, constitute unfair competition in violation of § 17200 of the California Business & Professional Code, at least because ECR4KIDS has obtained an unfair advantage as compared to Lakeshore by simulating Lakeshore's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Lakeshore.  ECR4KIDS has also interfered with Lakeshore's business.

47. Lakeshore's trade dress is entitled to protection under the common law. Lakeshore's trade dress includes unique, distinctive, and non-functional designs. Lakeshore has extensively and continuously promoted and used Lakeshore's trade dress in the United States and the State of California. Through that extensive and continuous use, Lakeshore's trade dress has become a well-known indicator of the origin and quality of Lakeshore's children's furniture products. Lakeshore's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Lakeshore's trade dress acquired this secondary meaning before ECR4KIDS commenced its unlawful use of Lakeshore's trade dress in connection with the infringing products.

48. ECR4KIDS' use of Lakeshore's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Lakeshore for which Lakeshore has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Lakeshore's trade dress, Lakeshore's children's furniture products, and Lakeshore.

49. On information and belief, ECR4KIDS' use of Lakeshore's trade dress and colorable imitations thereof has been intentional, willful, and malicious. ECR4KIDS' bad faith is evidenced at least by the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

50. Lakeshore is entitled to injunctive relief, and Lakeshore is also entitled to recover at least ECR4KIDS' profits, Lakeshore's actual damages, enhanced profits and damages, a civil penalty, and reasonable attorney fees under at least Cal. Bus. & Prof. Code §§ 17203 and 17206.

**Count V:**

**Trade Dress Dilution Under Cal. Bus. & Prof. Code § 14247**

51. Lakeshore realleges and incorporates the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

52.    Based on the activities described above, including, for example, ECR4KIDS' advertising, promoting, offering for sale, selling, and distributing the infringing products, ECR4KIDS is likely to dilute, has diluted, and continues to dilute Lakeshore's trade dress in violation of § 14247 of the California Business & Professional Code.  ECR4KIDS' use of Lakeshore's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Lakeshore's famous trade dress at least by eroding the public's exclusive identification of Lakeshore's famous trade dress with Lakeshore, by lessening the capacity of Lakeshore's famous trade dress to identify and distinguish Lakeshore's products, by associating Lakeshore's trade dress with products of inferior quality, and by impairing the distinctiveness of Lakeshore's famous trade dress.

53.    Lakeshore's trade dress is famous and is entitled to protection under California law.  Lakeshore's trade dress includes unique, distinctive, and non-functional designs.  Lakeshore has extensively and continuously promoted and used its trade dress in the United States and in the State of California.  Through that extensive and continuous use, Lakeshore's trade dress has become a famous well-known indicator of the origin and quality of Lakeshore's products in the United States and in the State of California generally and in geographic areas in California, and Lakeshore's trade dress is widely recognized by the public throughout California and in geographic areas in California as a designation of the source of Lakeshore and Lakeshore's products.  Lakeshore's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of California and in geographic areas in California.  Moreover, Lakeshore's trade dress became famous and acquired this secondary meaning before ECR4KIDS commenced its unlawful use of Lakeshore's trade dress in connection with the infringing products.

54.    ECR4KIDS' use of Lakeshore's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and

irreparable injury to Lakeshore for which Lakeshore has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Lakeshore's trade dress, Lakeshore's products, and Lakeshore.

55.   On information and belief, ECR4KIDS' use of Lakeshore's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. ECR4KIDS' bad faith is evidenced at least by the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

56.   Lakeshore is entitled to injunctive relief, and Lakeshore is also entitled to recover at least ECR4KIDS' profits, Lakeshore's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Cal. Bus. & Prof. Code § 14247.

## Count VI:

## **Common Law Trade Dress Infringement**

57.   Lakeshore realleges and incorporates the allegations set forth in paragraphs 1 through 56 as though fully set forth herein.

58.   ECR4KIDS' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Lakeshore, constitute common law trade dress infringement, at least because ECR4KIDS' use of Lakeshore's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Lakeshore.

59.   Lakeshore's trade dress is entitled to protection under the common law. Lakeshore's trade dress includes unique, distinctive, and non-functional designs. Lakeshore has extensively and continuously promoted and used its trade dress in the

United States and the State of California.  Through that extensive and continuous use, Lakeshore's trade dress has become a well-known indicator of the origin and quality of Lakeshore's children's furniture products.  Lakeshore's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Lakeshore's trade dress acquired this secondary meaning before ECR4KIDS commenced its unlawful use of Lakeshore's trade dress in connection with the infringing products.

60.   ECR4KIDS' use of Lakeshore's trade dress, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Lakeshore for which Lakeshore has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Lakeshore's trade dress, Lakeshore's children's furniture products, and Lakeshore.

61.   On information and belief, ECR4KIDS' use of Lakeshore's trade dress and colorable imitations thereof has been intentional, willful, and malicious. ECR4KIDS' bad faith is evidenced at least by the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

62.   Lakeshore is entitled to injunctive relief, and Lakeshore is also entitled to recover at least Lakeshore's damages, ECR4KIDS' profits, punitive damages, costs, and reasonable attorney fees.

## Count VII:

## Common Law Unfair Competition

63.   Lakeshore realleges and incorporates the allegations set forth in paragraphs 1 through 62 as though fully set forth herein.

64.   ECR4KIDS' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Lakeshore, constitute common law unfair competition, at least by palming off/passing off of

ECR4KIDS' goods, by simulating Lakeshore's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Lakeshore.  ECR4KIDS has also interfered with Lakeshore's business.

65.    Lakeshore's trade dress is entitled to protection under the common law. Lakeshore's trade dress includes unique, distinctive, and non-functional designs. Lakeshore has extensively and continuously promoted and used Lakeshore's trade dress in the United States and the State of California.  Through that extensive and continuous use, Lakeshore's trade dress has become a well-known indicator of the origin and quality of Lakeshore's children's furniture products.  Lakeshore's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Lakeshore's trade dress acquired this secondary meaning before ECR4KIDS commenced its unlawful use of Lakeshore's trade dress in connection with the infringing products.

66.    ECR4KIDS' use of Lakeshore's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Lakeshore for which Lakeshore has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Lakeshore's trade dress, Lakeshore's children's furniture products, and Lakeshore.

67.    On information and belief, ECR4KIDS' use of Lakeshore's trade dress and colorable imitations thereof has been intentional, willful, and malicious. ECR4KIDS' bad faith is evidenced at least by the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

68.    Lakeshore is entitled to injunctive relief, and Lakeshore is also entitled to recover at least Lakeshore's damages, ECR4KIDS' profits, punitive damages,

1 | costs, and reasonable attorney fees.

2 | **Count VIII:**

3 | **Common Law Misappropriation**

4 |     69.    Lakeshore realleges and incorporates the allegations set forth in
5 | paragraphs 1 through 68 as though fully set forth herein.

6 |     70.    ECR4KIDS' advertisements, promotions, offers to sell, sales, and/or
7 | distribution of the infringing products, in direct competition with Lakeshore,
8 | constitute common law misappropriation.

9 |     71.    Lakeshore created the products covered by Lakeshore's trade dress
10 | through extensive time, labor, effort, skill, and money.  ECR4KIDS has wrongfully
11 | used Lakeshore's trade dress, and/or colorable imitations thereof in competition
12 | with Lakeshore and gained a special advantage because ECR4KIDS was not
13 | burdened with the expenses incurred by Lakeshore.  ECR4KIDS has commercially
14 | damaged Lakeshore, at least by causing consumer confusion as to origin and/or
15 | sponsorship/affiliation of the infringing products, by creating the false and
16 | misleading impression that the infringing products are manufactured by, authorized
17 | by, or otherwise associated with Lakeshore, and by taking away sales that Lakeshore
18 | would have made.

19 |     72.    Lakeshore's trade dress is entitled to protection under the common law.
20 | Lakeshore's trade dress includes unique, distinctive, and non-functional designs.
21 | Lakeshore has extensively and continuously promoted and used Lakeshore's trade
22 | dress in the United States and the State of California.  Through that extensive and
23 | continuous use, Lakeshore's trade dress has become a well-known indicator of the
24 | origin and quality of Lakeshore's children's furniture products.  Lakeshore's trade
25 | dress has also acquired substantial secondary meaning in the marketplace.
26 | Moreover, Lakeshore's trade dress acquired this secondary meaning before
27 | ECR4KIDS commenced its unlawful use of Lakeshore's trade dress in connection
28 | with the infringing products.

73.     ECR4KIDS' use of Lakeshore's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Lakeshore for which Lakeshore has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Lakeshore's trade dress, Lakeshore's children's furniture products, and Lakeshore.   Moreover, as a result of its misappropriation, ECR4KIDS has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Lakeshore invested in establishing the reputation and goodwill associated with Lakeshore's trade dress, Lakeshore and Lakeshore's children's furniture products.

74.     ECR4KIDS' misappropriation of Lakeshore's trade dress and colorable imitations thereof has been intentional, willful, and malicious.   ECR4KIDS' bad faith is evidenced at least by the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

75.     Lakeshore is entitled to injunctive relief, and Lakeshore is also entitled to recover at least Lakeshore's damages, ECR4KIDS' profits, punitive damages, costs, and reasonable attorney fees.

## Count IX:

## Unjust Enrichment

76.     Lakeshore realleges and incorporates the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

77.     ECR4KIDS' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with Lakeshore, constitute unjust enrichment, at least because ECR4KIDS has wrongfully obtained benefits at Lakeshore's expense.   ECR4KIDS has also, *inter alia*, operated with an undue advantage.

78.     Lakeshore created the products covered by Lakeshore's trade dress through extensive time, labor, effort, skill, and money.   ECR4KIDS has wrongfully

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  used and is wrongfully using Lakeshore's trade dress, and/or colorable imitations

2  thereof, in competition with Lakeshore, and has gained and is gaining a wrongful

3  benefit by undue advantage through such use.  ECR4KIDS has not been burdened

4  with the expenses incurred by Lakeshore, yet ECR4KIDS is obtaining the resulting

5  benefits for its own business and products.

6      79.   Lakeshore's trade dress is entitled to protection under the common law.

7  Lakeshore's trade dress includes unique, distinctive, and non-functional designs.

8  Lakeshore has extensively and continuously promoted and used Lakeshore's trade

9  dress in the United States and the State of California.  Through that extensive and

10 continuous use, Lakeshore's trade dress has become a well-known indicator of the

11 origin and quality of Lakeshore's children furniture products.  Lakeshore's trade

12 dress has also acquired substantial secondary meaning in the marketplace.

13 Moreover, Lakeshore's trade dress acquired this secondary meaning before

14 ECR4KIDS commenced its unlawful use of Lakeshore's trade dress and colorable

15 imitations thereof in connection with the infringing products.

16     80.   ECR4KIDS' use of Lakeshore's trade dress, and/or colorable imitations

17 thereof, has caused and, unless enjoined, will continue to cause substantial and

18 irreparable commercial injury to Lakeshore for which Lakeshore has no adequate

19 remedy at law, including at least substantial and irreparable injury to the goodwill

20 and reputation for quality associated with Lakeshore's trade dress, Lakeshore's

21 children furniture products, and Lakeshore.  Lakeshore accumulated this goodwill

22 and reputation through extensive time, labor, effort, skill, and investment.

23 ECR4KIDS has wrongfully obtained and is wrongfully obtaining a benefit at

24 Lakeshore's expense by taking undue advantage and free-riding on Lakeshore's

25 efforts and investments, and enjoying the benefits of Lakeshore's hard-earned

26 goodwill and reputation.

27     81.   ECR4KIDS' unjust enrichment at Lakeshore's expense has been

28 intentional, willful, and malicious.  ECR4KIDS' bad faith is evidenced at least by

the similarity of the infringing products to Lakeshore's trade dress and by ECR4KIDS' continuing disregard for Lakeshore's rights.

82.    Lakeshore is entitled to injunctive relief, and Lakeshore is also entitled to recover at least ECR4KIDS' profits.

## Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1.    Judgment that ECR4KIDS has (i) infringed Lakeshore's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (ii) diluted Lakeshore's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) engaged in unfair competition in violation of California Business & Professional Code § 17200; (v) diluted Lakeshore's trade dress in violation of California Business & Professional Code § 14247; (vi) violated Lakeshore's common law rights in Lakeshore's trade dress; (vii) engaged in common law unfair competition; (viii) engaged in common law misappropriation; and (ix) been unjustly enriched at Lakeshore's expense, and that all of these wrongful activities by ECR4KIDS were willful;

2.    An injunction against further infringement and dilution of Lakeshore's trade dress, and further acts of unfair competition, misappropriation, and unjust enrichment by ECR4KIDS, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of Lakeshore's trade dress, pursuant to at least 15 U.S.C. § 1116 and Cal. Bus. & Prof. Code § 17203 and § 14247;

3.    An Order directing ECR4KIDS to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.    An Order directing the destruction of (i) all infringing products,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  including all recalled infringing products, (ii) any other products that use a copy,

2  reproduction, or colorable imitation of Lakeshore's trade dress in ECR4KIDS'

3  possession or control, (iii) all plates, molds, and other means of making the

4  infringing products in ECR4KIDS' possession, custody, or control, and (iv) all

5  advertising materials related to the infringing products in ECR4KIDS' possession,

6  custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

7        5.     An Order directing ECR4KIDS to publish a public notice providing

8  proper attribution of Lakeshore's trade dress to Lakeshore, and to provide a copy of

9  this notice to all customers, distributors, and/or others from whom the infringing

10  products are recalled;

11        6.     An Order barring importation of the infringing products and/or

12  colorable imitations thereof into the United States, and barring entry of the

13  infringing products and/or colorable imitations thereof into any customhouse of the

14  United States, pursuant to at least 15 U.S.C. § 1125(b);

15        7.     An award of ECR4KIDS' profits, Lakeshore's actual damages,

16  enhanced damages, exemplary damages, costs, prejudgment and post judgment

17  interest, civil penalties, and reasonable attorney fees pursuant to at least 15 U.S.C.

18  §§ 1125(a), 1125(c), 1116, and 1117 and Cal. Bus. & Prof. Code §§ 17203, 17206,

19  14247 and 14250; and

20        8.     Such other and further relief as this Court deems just and proper.

21

22  DATED: December 13, 2018            Respectfully submitted,

23

24                                     By: _____

25

26                                     John K. Flock (State Bar No. 200183)
                                       jflock@bglawyers.com
27                                     Bradley & Gmelich LLP
                                       700 N. Brand Boulevard 10th Floor
28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Glendale, CA 91203
Telephone: (818) 243-5200
Facsimile: (818) 243-5266

Katherine Laatsch Fink (*pro hac vice* forthcoming)
kfink@bannerwitcoff.com
Illinois Bar No. 6292806
Anna King (*pro hac vice* forthcoming)
aking@bannerwitcoff.com
Illinois Bar No. 6295283
John A. Webb (*pro hac vice* forthcoming)
jwebb@bannerwitcoff.com
Illinois Bar No. 6321695
Banner & Witcoff, Ltd.
71 Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Attorneys for Plaintiff

LAKESHORE EQUIPMENT COMPANY

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# **JURY DEMAND**

Plaintiff LAKESHORE EQUIPMENT COMPANY hereby demands a trial by a jury on all issues herein so triable.

DATED: December 13, 2018          Respectfully submitted,


By:_____

John K. Flock (State Bar No. 200183)
jflock@bglawyers.com
Bradley & Gmelich LLP
700 N. Brand Boulevard 10th Floor
Glendale, CA 91203
Telephone: (818) 243-5200
Facsimile: (818) 243-5266

Katherine Laatsch Fink (*pro hac vice* forthcoming)
kfink@bannerwitcoff.com
Illinois Bar No. 6292806
Anna King (*pro hac vice* forthcoming)
aking@bannerwitcoff.com
Illinois Bar No. 6295283
John A. Webb (*pro hac vice* forthcoming)
jwebb@bannerwitcoff.com
Illinois Bar No. 6321695
Banner & Witcoff, Ltd.
71 Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Attorneys for Plaintiff
LAKESHORE EQUIPMENT COMPANY

Case No. 2:18-cv-10338
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF